IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW L. BARTON, individually and on behalf of himself and all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>WALMART INC.,<br><br>              Defendant. | Case No. 1:21-cv-04329<br><br>The Hon. John F. Kness, District Judge<br><br>The Hon. Susan E. Cox, Magistrate Judge |

# DEFENDANT WALMART INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM

Plaintiff Andrew L. Barton's ("Plaintiff") entire case is based on the premise that a limited set of word and phrase recordings he made as part of his employment at Defendant Walmart Inc. ("Walmart") was a "voiceprint" regulated by the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). Plaintiff's premise is faulty: the statutory language and the unanimous decisions of this Court make clear that BIPA applies only to data ***used to identify an individual***. The recordings at issue were not used to identify Plaintiff by his voice, but rather to enable an order fulfillment system to understand his voice communications so it could track the flow of inventory in the distribution and fulfillment center where he worked. Indeed, Plaintiff concedes that he identified himself by entering his "employee number[] into a system" before working with the system to fill orders; and that the purpose of the system at issue was "to track [Walmart's] inventory in real time" by recognizing a series of words. A system that simply recognizes words without using the words to identify the individual speaking them does not

implicate BIPA. For this reason alone, Plaintiff's BIPA claim fails and the Complaint should be dismissed in its entirety.

Plaintiff's BIPA claim also must be dismissed for the separate and independent reason that the Illinois Workers' Compensation Act ("IWCA") preempts BIPA because the alleged injury occurred as a condition of and during Plaintiff's employment with Walmart. Illinois precedent has made clear that any workplace injury—including those based on privacy harms, like those here— must be adjudicated through IWCA.

For these reasons, and as more fully explained below, Walmart respectfully requests that the Court dismiss the Complaint with prejudice.

I.  **PLAINTIFF'S COMPLAINT**

Plaintiff alleges he worked as a "picker" at a Walmart distribution and fulfillment center between March 2019 and May 2021. (Compl. ¶¶ 2–4, 16.) His job duties included "select[ing] items from storage bins or other storage areas and fill[ing] orders by getting them ready for shipment, including pulling the items and placing them on pallets for order packers." (*Id.* ¶ 4.)

Walmart allegedly requires all pickers like Plaintiff to use Vocollect, which the Complaint characterizes as a voice-recognition system that Walmart used to increase overall efficiency at distribution and fulfillment centers by tracking inventory in real time. (*Id.* ¶¶ 5, 7–8.) Plaintiff alleges that before using Vocollect, a picker must create a "template" (which Plaintiff also labels a "voice print") by reciting certain individual words, short two-word phrases, and numbers that the picker is likely to use when using Vocollect. (*Id.* ¶¶ 6–7, 30.) According to the Complaint, these words and numbers include: "next pick," "repeat pick," "trip summary," "say again," "repeat label," "000," "101," and "929." (*Id.* ¶ 31.) The voice recording allegedly allows Vocollect to learn the picker's voice communications and patterns so that it can track the orders being filled in real time. (*Id.* ¶¶ 6, 8, 30.)

Plaintiff alleges that prior to using Vocollect each day, "pickers would enter their employee numbers into a system." (*Id.* ¶ 39.)[1] At that point, Vocollect "would confirm with [the picker] that they were using a voice recognition technology method of picking . . ." (*Id.*) After confirmation, the picker would begin to fulfill orders while using a headset. (*Id.*) Specifically, Plaintiff alleges that pickers "receive orders to fill" through the headset "and are required to respond into the headset telling it where they are in the warehouse, the product that they have pulled from storage, the amount of that product that they have pulled, and the order that they are filling." (*Id.* ¶ 7.)

Based on these allegations, Plaintiff brought suit asserting that Walmart acquired biometric data in violation of BIPA. (*Id.* ¶¶ 53–65.) Specifically, Plaintiff claims that the voice recordings created by pickers are "biometric identifiers" and "biometric information" under BIPA. (*Id.* ¶¶ 58–59.) Plaintiff's BIPA claim has two theories: possession and collection. First, Walmart allegedly violated 740 ILCS 14/15(a) because it was "in possession" of Plaintiff's biometric data while failing to publish a retention policy and destruction guidelines for the data. (Compl. ¶¶ 55–56, 63.) Second, Walmart allegedly violated 740 ILCS 14/15(b) when it "collect[ed], "capture[d], . . . or otherwise obtain[ed]" Plaintiff's biometric data without informing him about the data collection or about the purpose and length of the collection, and without obtaining informed written consent from Plaintiff to collect the data. (Compl. ¶¶ 54, 60–62.)

The putative class action is brought on behalf of "[a]ll persons who, within the applicable statute of limitations and while residing in Illinois, had their voice print collected, captured, received, otherwise obtained, or disclosed by [Walmart] in Illinois." (*Id.* ¶ 47.)

---

[1] In reality, such a number, and not any voiceprint, is how the system identifies the user.

## II. ARGUMENT

### A. Standard of Review

Dismissal of a complaint is required if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a complaint must allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "if a plaintiff pleads facts which show he has no claim, then he has pled himself out of court." *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

### B. The Illinois Biometric Information Privacy Act

BIPA was enacted in 2008 to address the growing use of biometric data and its "heightened risk for identify theft" if "compromised." 740 ILCS 14/5. BIPA regulates (1) "biometric identifiers" and (2) "biometric information." 740 ILCS 14/10. A "biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* "Biometric information," which references biometric identifiers, is defined as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier *used to identify an individual*." *Id.* (emphasis added). If the data is neither a "biometric identifier" nor "biometric information," then it is unregulated by BIPA.

Under BIPA, private entities acquiring biometric data must comply with a number of statutory requirements, two of which are relevant here. First, a private entity "in possession of" biometric data must "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying" the data. 740 ILCS 14/15(a). Second, before a private entity may "collect, capture, purchase, receive through trade, or otherwise obtain" an individual's biometric data, it must inform the individual "in writing" of the "specific

4.

purpose and length of term" for which the biometric data is being "collected, stored, and used" and also obtain "informed written consent." 740 ILCS 14/15(b); 740 ILCS 14/10.

  **C. Plaintiff Fails to Allege that the Voice Recordings Are "Biometric Identifiers" or "Biometric Information" Under BIPA**

The Complaint fails to state a claim under BIPA because the voice recordings it alleges are not "biometric identifiers" or "biometric information" as defined by the law. Both terms only apply to biometric data that *is used to identify an individual*. Plaintiff, however, does not actually provide any non-conclusory allegations that the voice recordings are used to identify him. Because the voice recordings are not regulated by BIPA, Plaintiff's claims all fail.

**No Biometric Identifier.** Plaintiff alleges BIPA applies to Walmart's possession or collection of his voice recordings because they are "voice prints" and thus constitute a "biometric identifier" covered under BIPA. (Compl. ¶¶ 30, 58.) Not so. For a voiceprint to qualify as a "biometric identifier," it must, among other things, be used for the identification of a specific person. Plaintiff has not pled any such allegations.

In determining whether Plaintiff's voice recording qualifies as a "voiceprint," this Court must look to the "plain and ordinary meaning" of BIPA. *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019). "[W]here, as here, the term [voiceprint] has not been specifically defined by the legislature," courts should look to the dictionary "to ascertain the plain and ordinary meaning of a statutory term[.]" *See id.* at 1205 (citing Black's Law Dictionary to interpret "aggrieved" under BIPA). "Voiceprint" is defined as "[a] distinctive pattern of curved lines and whorls made by a machine that measures human vocal sounds *for the purpose of identifying an individual speaker*." *Voiceprint*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added).[2]

---

[2] The Complaint also does not include sufficient allegations establishing that the voice recordings create graphical representations of a person's voice. Black's Law Dictionary and others define "voiceprint" in reference to some "individually *distinctive pattern* of certain voice characteristics

Based on its plain meaning, a "voiceprint" under BIPA is therefore best understood as "the use of biological characteristics—one's voice—to verify an individual's identity without requiring the use of a passcode or answers to secret questions." *See McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 716 (S.D. Ill. 2020).

The Illinois Office of the Attorney General ("OAG"), whose opinions are highly persuasive authority when interpreting undefined statutory terms,[3] has also interpreted "voiceprints" in the same manner. In a 2017 opinion, the OAG specifically determined that a "voiceprint" under BIPA is "not the same as a simple recording of a voice" but is a "record of mechanical measurement" that "*identif[ies] an individual speaker*." *See* Public Access Opinion No. 17-011, Ill. Off. of Att'y Gen., 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) (emphasis added) (citing BIPA and quoting Black's Law Dictionary for the definition of "voiceprint"). Indeed, voiceprints are part of the broader statutory term "biometric identifiers," and the OAG had previously determined that a "biometric identifier" must be "one that identifies" an individual. *See* Public Access Opinion No. 14-008, Ill. Off. of Att'y Gen., 2014 WL 4407615, at *2 (Ill. A.G. Aug. 19, 2014).

Similarly, courts in this District have unanimously concluded that the term "biometric identifier" requires that the biometric data at issue be used to identify a person. "The bottom line is that a 'biometric identifier' is not the underlying medium itself, or a way of taking

---

*that is spectrographically produced*." *See Voiceprint*, Meriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/voiceprint (last visited Sept. 17, 2021) (emphasis added); *see also Voiceprint*, Oxford Learner's Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/voiceprint (last visited Sept. 17, 2021) ("a printed record of a person's speech, showing the different frequencies and lengths of sounds as a series of waves"). Because the voice recordings are not alleged to be graphical representations of an individual's voice, they are not "voiceprints" under BIPA, and Plaintiff's claim should be dismissed on this distinct and independent ground as well.

[3] *See, e.g.*, *Cebertowicz v. Ill. Dep't of Corrections*, 64 N.E.3d 175, 181 (Ill. App. Ct. 2016) ("Although not binding on the courts, a well-reasoned opinion of the [OAG] is entitled to considerable weight, especially in a matter of first impression in Illinois." (citation omitted)).

measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) *used to identify a person*." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017) (emphasis added); *id.* at 1097 ("[T]he things on the list of biometric identifiers are just that—specific, biology-based measurements *used to identify a person* . . ." (emphasis added)). In *Rivera*, the court analogized the difference between scans of face geometry and photographs to the difference between "voiceprints" and voice recordings: "[I]f Google simply captured and stored the photographs and did not measure and generate scans of face geometry, then there would be no violation of [BIPA]. (The same is true of someone, say a journalist, who records a person's voice without generating a voiceprint.)" *Id.* (emphasis omitted). Other judges in this District have consistently held that, to trigger BIPA liability, the biometric data must identify an individual. *See, e.g.*, *Mutnick v. Clearview AI, Inc.*, 2020 WL 4676667, at *1–2 (N.D. Ill. Aug. 12, 2020) (noting "plaintiffs' privacy rights were violated" under BIPA where plaintiffs alleged that "defendants built a searchable database of the scanned images enabling database users to instantly identify unknown individuals using nothing more than a photograph"); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *1 (N.D. Ill. Sept. 15, 2017) (explaining that "whenever a new image is uploaded onto Shutterfly's site" it is used to determine "[i]f a face's geometry matches that of an individual already in [Shutterfly's] database").[4]

This established line of precedent confirms that the voice recordings at issue in the Complaint here are not "biometric identifiers" under BIPA. Rather, the Complaint alleges that the

---

[4] Courts outside the Seventh Circuit are in accord. *See, e.g.*, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1273 (9th Cir. 2019) (emphasizing that Facebook's facial recognition technology, once applied to a user in a photo, allowed Facebook "to identify that individual in any of the other hundreds of millions of photos uploaded to Facebook each day . . ."); *Vance v. Amazon.com Inc.*, 2021 WL 963484, at *7 (W.D. Wash. Mar. 15, 2021) ("a 'biometric identifier' . . . is a set of measurements of a specified physical component . . . used to identify a person" (quoting *Rivera*, 238 F. Supp. 3d at 1097)).

Vocollect system creates voice recordings in order to allow it to understand certain words—not to identify the speaker saying those words. Vocollect's purpose, as the Complaint states, is to track the inventory those pickers are moving; Plaintiff repeatedly alleges the voice recordings allow Walmart "to learn [a picker's] voice" for the sole purpose of recognizing the words that the system uses to track and manage inventory "in real time[.]" (*See* Compl. ¶¶ 6, 8.)[5]

Moreover, Plaintiff acknowledges that "pickers would enter their employee numbers into a system" and only thereafter the system "would confirm with them that they were using" the headset. (*See id.* ¶ 39.) In other words, the Vocollect system cannot identify specific pickers using the voice recordings alone. Instead, viewing Plaintiff's allegations in the light most favorable to him, Vocollect only understands that an individual is using a headset after he or she enters the correct employee "passcode." *See McGoveran*, 488 F. Supp. 3d at 716 (explaining a voiceprint must identify an individual on its own without requiring additional information). This underscores that the voice recordings are missing the hallmark of any biometric data: the identification of a specific individual.

Plaintiff's allegations stand in stark contrast to other voiceprint or biometric cases in which the particular technology at issue was used to identify specific individuals. *See, e.g.*, *McGoveran*, 488 F. Supp. 3d at 716 (alleging a voiceprint under BIPA where defendant's call centers utilized a "'Deep Voice' product, which uses biometrics to identify and analyze repeat callers"); *Mutnick*,

---

[5] This Court should not credit Plaintiff's one, formulaic allegation regarding the voice recording's purported ability to identify Plaintiff and putative class members, (*see* Compl. ¶ 59 (alleging "biometric identifiers were used to identify [Plaintiff and the putative class]")), because it is conclusory and regurgitates the statutory text without providing any details, *see Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (explaining that a complaint must include "some specific facts to ground [the] legal claims" and "merely parrot[ing] the statutory language" is insufficient to survive a Rule 12(b)(6) motion). This allegation confirms that Plaintiff knows biometrics under BIPA must identify a person—and makes it all the more telling that he alleges no facts that could meet that requirement.

2020 WL 4676667, at *1 (alleging technology allows defendant to "instantaneously identify the subject of a photograph with unprecedent accuracy, enabling covert and remote surveillance of Americans on a mass scale"); *Patel*, 932 F.3d at 1273 (involving Facebook's technology used to identify and suggest tagging other users in a particular photo based on other prior photos). In those instances, courts properly applied BIPA to technology that identified users. In contrast, the voice recordings at issue here are just that: simple recordings of an individual's voice not used to identify that individual, which both the OAG and this District's decision in *Rivera* explained are not biometric data regulated by BIPA. *See Rivera*, 238 F. Supp. 3d at 1097 ("[S]omeone . . . who records a person's voice without generating a voiceprint" does not violate BIPA); Public Access Opinion No. 17-011, Ill. Off. of Att'y Gen., 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) (A voiceprint "is not the same as a simple recording of a voice").

**No Biometric Information.** Under BIPA, Plaintiff must show that the voice recordings Walmart allegedly required him to make constitute "biometric information," that is, "information . . . based on an individual's biometric identifier *used to identify an individual*." 740 ILCS 14/10 (emphasis added). As discussed above, the voice recordings are neither biometric identifiers (i.e., voiceprints), nor are they used to identify an individual. Plaintiff therefore has failed to establish that Walmart possessed or collected any "biometric information." The Complaint should be dismissed because the voice recordings are not "biometric identifiers" or "biometric information."

### D. Plaintiff's Claim is Barred by the Illinois Workers' Compensation Act

Plaintiff's claim fails for another independent reason: the Illinois Workers' Compensation Act ("IWCA") is the exclusive remedy for workplace injuries, like the one alleged here.

#### 1. IWCA's Exclusivity Provision is Broad and Encompasses Workplace Privacy-Based Injuries.

Under IWCA, employees have "no common law or statutory right to recover damages from

the employer . . . for injury [] sustained . . . while engaged in the line of [] duty . . . ," 820 ILCS 305/5(a) ("Exclusivity Provision"), or for an injury "arising out of and in the course of the employment . . . ," 820 ILCS 305/11. *See Richardson v. Cnty. of Cook*, 621 N.E.2d 114, 117 (Ill. App. Ct. 1993) (explaining IWCA does not provide a "'statutory right to recover damages from the employer . . .' for injuries incurred in the course of her employment"); *Folta v. Ferro Eng'g*, 43 N.E.3d 108, 116 (Ill. 2015) (reiterating IWCA is the exclusive remedy for workplace injuries).

IWCA preemption is categorical. As the Illinois Supreme Court has held: "The language of [the Exclusivity Provision], read alone, leaves no room for construction" because "[i]t bars any 'statutory right to recover damages for injury'" in the workplace. *Gannon v. Chicago, Milwaukee, St. Paul & P. Ry. Co.*, 150 N.E.2d 141, 143 (Ill. 1958) (concluding that a claim under Illinois' Scaffold Act was barred by the "broad sweep" of the Exclusivity Provision). Applying *Gannon*, Illinois appellate courts have consistently held that the "clear language of [the Exclusivity Provision] bars any right of [the] plaintiff to recover" under various state statutes. *See Vacos v. La Salle Madison Hotel Co.*, 159 N.E.2d 24, 26 (Ill. App. Ct. 1959) (Illinois' Dram Shop Act); *see also Carey v. Coca-Cola Bottling Co. of Chicago*, 363 N.E.2d 400, 402 (Ill. App. Ct. 1977) (Illinois' Structural Work Act); *Copass v. Ill. Power Co.*, 569 N.E.2d 1211, (Ill. App. Ct. 1991) (Illinois' Public Utilities Act). Moreover, the Illinois Supreme Court has held that the Exclusivity Provision encompasses *any* alleged workplace injury. *See Robertson v. Travelers Ins. Co.*, 448 N.E.2d 866, 869 (Ill. 1983) (clarifying that the Exclusivity Provision is "broadly worded" and thus "requires exclusive resort to the workmen's compensation remedy for any 'injury' arising out of and in the course of the employment . . ."); *Duley v. Caterpillar Tractor Co.*, 253 N.E.2d 373, 374 (Ill. 1969) (explaining that IWCA "cover[s] the whole ground of the liabilities of the master").

Because Plaintiff alleges he was injured during his employment at Walmart, IWCA

governs here and bars his claims. Plaintiff alleges he was required to create the voice recordings that are the purported "voice prints" as part of his job duties. (*See* Compl. ¶ 30 ("[W]hen warehouse workers, in particular, pickers, first begin work at one of [Walmart's] warehouses or distribution facilities, . . . they are required to provide extensive voice prints . . .")). Therefore, Plaintiff alleges he suffered an injury caused by a BIPA violation while working in the "line of [] duty" and during "the course of [his] employment." *See* 820 ILCS 305/5(a), 820 ILCS 305/11.

The legislative history confirms Plaintiff's BIPA claim is presumed to be barred by IWCA. Before BIPA was passed, Illinois state courts had held that the Exclusivity Provision encompassed privacy-based injuries. *See Richardson*, 621 N.E.2d at 116, 118 (an employee forced to "disrobe" in front of coworkers suffers "an injury [that] is compensable under [IWCA] if it was sustained during the course of employment and arose from that employment"); *Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1004, 1038 (Ill. App. Ct. 1999) ("a systematic spying operation on [her] through a hole in the ceiling of the [] women's bathroom" was subject to the Exclusivity Provision)[6]; *Goins v. Mercy Ctr. for Health Care Servs.*, 667 N.E.2d 652, 656–57 (Ill. App. Ct. 1996) (explaining claim for improper disclosure under the state's AIDS Confidentiality Act would be preempted by IWCA if hospital acted as an employer). The Illinois "legislature is presumed to be aware of [these] judicial decisions interpreting legislation[,]" *see Pielet v. Pielet*, 978 N.E.2d 1000, 1013 (Ill. 2012), yet it failed to create an exception to IWCA when passing BIPA, *see People v. Johnson*, 160 N.E.3d 31, 44 (Ill. 2019) ("[I]f the legislature meant to change the existing law, it had to indicate a clear intent to do so."). This Court should reject Plaintiff's attempt to "rewrite" IWCA "by reading into it [an] exception[]" for BIPA injuries that was "not expressed by the

---

[6] The portion of this decision regarding the Exclusivity Provision was deemed non-publishable under Illinois Supreme Court Rule 23.

legislature." *See People ex rel. Birkett v. Dockery*, 919 N.E.2d 311, 316–17 (Ill. 2009). In *Folta*, for example, the Illinois Supreme Court discussed IWCA and the "analogous[]" Illinois' Workers' Occupational Disease Act, which provides the exclusive remedy for "any injury to health [or] disease" occurring in the workplace. 43 N.E.3d at 112–13. The court held that "it would be a radical departure to suggest that the exclusivity provisions apply only for certain occupational diseases" and not others. *Id.* at 118.

Just as the Illinois Supreme Court observed in *Folta* regarding certain occupational diseases, it would defy the plain language of the Exclusivity Provision to exclude BIPA injuries. IWCA is the exclusive remedy for employees seeking to hold employers liable for any injury, including all privacy-based harms, suffered "in the line of [] duty" or that "ar[ose] out of and in the course of the employment[.]" *See* 820 ILCS 305/5(a), 820 ILCS 305/11. As a result, Plaintiff cannot escape the "broad sweep" of the Exclusivity Provision. *See Gannon*, 150 N.E.2d at 143.

### 2. *Folta* Supports Dismissal of Plaintiff's BIPA Claim.

An employee's claim against an employer is barred by the Exclusivity Provision unless the employee can carry his burden in demonstrating that his injury "(1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under [IWCA]." *Folta*, 43 N.E.3d at 113; *see also Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir. 2018) (noting the employee's burden).[7] Plaintiff cannot satisfy any of these elements.

---

[7] Walmart acknowledges several courts in the Seventh Circuit, including this District, have held that BIPA injuries are "not compensable" under IWCA. *See Roberson v. Maestro Consulting Servs. LLC*, 507 F. Supp. 3d 998, 1019–20 (S.D. Ill. 2020) (collecting cases). Walmart respectfully disagrees with the reasoning of those decisions and instead urges this Court to follow the decisions of the Illinois Supreme Court, as set forth in the preceding subsection. *See supra* II.D.1 (citing *Gannon* and *Folta*); *see also Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) ("the task of the federal court sitting in diversity is to ascertain the substantive content of state law as it [] has been determined by the highest court of the state").

As to the first element, a "tort is 'accidental' within the meaning of [] IWCA because it is unexpected and unforeseeable from both the injured employee's and the employer's points of view." *Baylay*, 881 F.3d at 1039 ("An employee's claims of employer negligence and willful and wanton conduct fall within the definition of 'accidental.'"). Here, the Court should give no weight to the Complaint's conclusory allegation that Walmart intentionally violated BIPA. *See Brooks*, 578 F.3d at 581 (instructing plaintiffs not to "merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit) . . ."). The Complaint certainly alleges no facts supporting the notion that either Walmart or Plaintiff expected a BIPA violation to occur at the time Plaintiff alleges it happened.

Plaintiff's alleged injury arose out of and was incurred "during the course of his employment" because the Complaint alleges that he was required to provide a voice recording as a condition of his employment at Walmart's distribution and fulfillment center. *See Folta*, 43 N.E.3d at 113. Thus, the second and third elements are satisfied.

Last, Plaintiff's BIPA injury is "compensable under" IWCA. *See id.* Under IWCA, an injury is compensable when it "arises out of and in the course of employment." *See Sjostrom v. Sproule*, 210 N.E.2d 209, 211 (Ill. 1965) (explaining that "the general test of compensability" is "identical" to the "line of duty" test, meaning an injury is compensable if it "arise(s) out of and in the course of employment"); *Unger v. Cont'l Assurance Co.*, 481 N.E.2d 684, 687 (Ill. 1985) ("An injury will be found to be compensable if it 'aris[es] out of and in the course of the employment.'") (citation omitted)). An injury is "not compensable" only if it is "the type of injury" that is "categorically" excluded by IWCA. *See Folta*, 43 N.E. 3d at 113–15. But privacy injuries generally, and BIPA injuries specifically, are not categorically excluded by the Exclusivity Provision as discussed above. *See supra* II.D.1.

For these reasons, Plaintiff's attempt to carve out real and significant workplace injuries from the Exclusivity Provision's "broad sweep" should be rejected. Walmart respectfully requests that the Court dismiss the Complaint because Plaintiff's BIPA claim is barred by IWCA.

### E.  Alternatively, the Court Should Issue a Stay Pending a Potentially Dispositive Ruling from the Illinois Supreme Court

Alternatively, Walmart respectfully requests that the Court issue a stay in this case pending the final resolution of *McDonald v. Symphony Bronzeville Park LLC*, an appellate court decision holding that IWCA did not bar BIPA violations in the workplace. 2020 WL 5592607, at *8 (Ill. App. Ct. Sept. 18, 2020). Walmart urges this Court not to follow the intermediate court's reasoning because "there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *See Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015); *see also supra* II.D.1. While acknowledging that it was "not aware of a single Illinois appellate decision [] applying or expanding upon *Folta*'s relatively new characterization of 'compensability[,]'" the appellate court in *McDonald* limited the "compensability" analysis in a manner that the Illinois Supreme Court did not intend in *Folta*. *See* 2020 WL 5592607, at *6. Unsurprisingly, the Illinois Supreme Court has granted review of the lower court's decision. *McDonald v. Symphony Bronzeville Park, LLC*, No. 126511, 2021 WL 641712 (Ill. Jan. 27, 2021). The Illinois Supreme Court has scheduled oral argument in *McDonald* for September 23, 2021— less than a week after this motion is filed. *See Supreme Court Docket – September Term 2021*, Illinois Courts, https://www.illinoiscourts.gov/supreme-court/docket/ (last visited Sept. 17, 2021).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts have issued stays pending resolution of *McDonald*, in addition to other potentially dispositive BIPA appeals

that are currently pending in various courts. *See Bell v. SDH Servs. W., LLC*, 2020 WL 9812014, at *2 (N.D. Ill. Aug. 27, 2020) (staying case until appellate decision in *McDonald*); *Morgan v. Kroger Bus. P'ship I*, 2021 WL 2805596, at *1 (S.D. Ill. July 6, 2021) (granting unopposed motion to stay pending review of *McDonald* by Illinois Supreme Court). Because the Illinois Supreme Court's review of the decision in *McDonald* could be case dispositive, the Court should issue a stay in this action to conserve judicial and party resources.

### III.    CONCLUSION

For these reasons, Walmart respectfully requests that the Court dismiss the Complaint with prejudice because Plaintiff's own allegations demonstrate that he cannot state a claim under BIPA and because, even if BIPA did apply, the law is preempted by IWCA. In the alternative, the Court should stay this case pending a ruling by the Illinois Supreme Court in *McDonald*.

Dated: September 17, 2021

By: /s/ Michael G. Rhodes
Michael G. Rhodes

ROBERT E. EARLES (6308936)
(rearles@cooley.com)

COOLEY LLP
444 W. Lake Street
Suite 1700
Chicago, IL 60606
Telephone: +1 312 881 6500
Facsimile: +1 312 881 6598

MICHAEL G. RHODES*
(rhodesmg@cooley.com)
WHITTY SOMVICHIAN*
(wsomvichian@cooley.com)
KYLE C. WONG*
(kwong@cooley.com)
ANUPAM DHILLON*
(adhillon@cooley.com)

COOLEY LLP
3 Embarcadero Center
20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

*Attorneys for Defendant*

**Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the forgoing Defendant Walmart Inc.'s Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim was served on September 17, 2021 via the Court's ECF system to all counsel of record.

/s/ Michael G. Rhodes