**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW L. BARTON, individually and on behalf of himself and all others similarly situated, | ) ) ) ) | |
| | ) | Case No.  1:21-CV-04329 |
| | ) | |
| Plaintiff, | ) | Hon. John F. Kness, District Judge |
| | ) | |
| | ) | Hon. Susan E. Cox, Magistrate Judge |
| | ) | |
| v. | ) | |
| | ) | <u>JURY TRIAL DEMANDED</u> |
| WALMART INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiff Andrew L.  Barton ("Barton" or "Plaintiff") brings this Amended Class Action Complaint and Demand for Jury Trial ("Amended Complaint") against Defendant Walmart Inc. ("Walmart" or the "Defendant") for its violations of the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). Specifically, this action ("Action") seeks: (1) pursuant to Section 15(a) of BIPA, to cause Walmart to issue a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers; to wit, voiceprints, that is has obtained from its employees and the putative class ("Class") members, as defined below; (2) pursuant to Section 15(a) of BIPA, to have Defendant comply with any written policy by returning or destroying the biometric identifiers or voiceprints that it has retained for over three years and for which the initial use is no longer pertinent; and (3) pursuant to Section 15(b), to put a stop to Walmart's intentional, reckless and/or negligent unlawful collection, capture, use, possession and storage of Plaintiff's and the Class members' sensitive biometric identifiers, to wit, their voice prints, without their consent and to have it obtain consent from any employee whose voiceprint

1

was wrongfully obtained by Walmart without his/her statutorily required consent. Plaintiff also seeks statutory damages and injunctive relief, including causing Walmart to issue a written policy governing its collection and retention of biometric identifiers and to comply with that policy. Plaintiff, for his Amended Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, based upon counsel's diligent investigation, publicly available documents, and the conduct and statements of Defendant.

## NATURE OF THE ACTION

1.      Defendant Walmart is one of the largest retailers in the world, with both brick and mortar and on-line stores. It operates as Walmart US, Walmart International, and Sam's Club.

2.      Walmart maintains one of the largest distribution operations in the world, consisting of over 150 distribution centers which service stores, clubs and direct delivery to customers.

3.      Plaintiff worked at the fulfillment/distribution center located in Elwood, Illinois, as an order "picker". "Pickers" are warehouse workers who select items from storage bins or other storage areas and fill orders by getting them ready for shipment, including pulling the items and placing them on pallets for order packers.

4.      Walmart operates its distribution and/or fulfillment centers through the use of biometrics and, in particular, the use of voiceprints and voice/speaker recognition technology. Through this technology, it specifically creates workers' voiceprints, voice patterns or templates, which are then used to enable these workers to interact with Walmart's warehouse technology and from which the voice recognition technology can specifically identify the worker.

5.      Specifically, at the beginning of a picker's training, he/she is required to provide Walmart with his personal speech patterns by reading a series of voice template words repeatedly into Walmart's voice recognition software until a voiceprint or template of his voice is created,

and the software is trained to understand his idiosyncratic way of speaking and to specifically identify and recognize the individual worker and his voice.

6.      This voice template or voiceprint, which specifically sets forth the worker's voice pattern, then becomes part of that worker's data file, known as an operator data file, which contains the worker's name, his employee number and his voiceprint.

7.      Once the worker reports to work, he inputs his employee number into a wireless device containing, among other things, Walmart's voice recognition software, that works with a headset.  The voice template portion of his operator data file then loads into the device from a central database known as a voice console, where operator data files, including biometric voiceprints, are stored.

8.      Thereafter, the worker is sent orders from a central worker management computer through his headset, and executes those orders by interacting and having a dialogue with the voice recognition software which responds to him based upon the worker's voiceprint or template.

9.      The software does this by breaking down and analyzing the real time version of the worker's voice, essentially breaking it into small patterns, and comparing his voice with the characteristics of his voiceprint or voice template on which the voice recognition technology has been trained, thus effectively recognizing and identifying the worker.

10.     The voiceprints involved in this Action are not merely voice "recordings" but biometric identifiers that are influenced by both the physical structure of an operator's vocal tract and his specific vocal behavioral characteristics.  As a worker's voice changes in different environments, the software adjusts the template to account for changes in the worker's voice, thereby changing the voiceprint to further refine its ability to recognize and ability to identify the worker.

11.     The use of biometric voiceprints are a material benefit to Defendant, because it

increases overall efficiency at distribution and fulfillment centers by identifying the individual's voice patterns as they give commands.

12. Given how personalized the templates are and the fact that they are adjusted by the system's software to account for changes in the particular speaker's voice, one worker cannot use the voice template or biometric identifier of another worker and the templates can only be used by the worker who created it. Moreover, it is part of the operator's stored data file that also contains his name and employee number and is therefore identified solely with that worker.

13. While Plaintiff and the Class members were required to provide their voiceprints or voice templates for Walmart's voice/speaker recognition technology, they were never asked for their consent, nor were they ever provided with a written policy regarding the use of their biometric identifiers as required under BIPA.

14. Moreover, they were never told whether their voiceprints would be deleted from the Company's systems or when they would be deleted, and Walmart failed to timely delete such voiceprints from the voice console or its computer systems even after a picker or warehouse worker's engagement was terminated, as was the case with Plaintiff.

15. While there may be certain benefits to using biometric technology in the workplace, there are also serious risks. The voiceprints at issue here are unique, permanent biometric identifiers associated with an employee which, if obtained by hackers, particularly since they are part of the operator data file, can be manipulated and used to commit identity theft.

16. Defendant's collection and storage of biometric identifiers and/or biometric information in a central voice console, along with the rest of their workers' operator data files, which could be hacked or breached, exposed and continues to expose Plaintiff and Class members to serious and irreversible privacy risks.

17. Recognizing the need to protect its citizens from situations like these, Illinois

enacted BIPA, specifically to regulate companies that collect and store Illinois citizens' biometric identifiers, including voiceprints such that those at issue here.

18.    Despite this law, Defendant, knowing full well what the law is respecting the collection, possession and use of biometric identifiers, and voiceprints in Illinois, disregards its workers' statutorily and common law protected privacy rights and unlawfully collects, captures, possesses, stores, and uses their biometric identifiers in violation of the BIPA. Specifically, Defendant has violated (and continues to violate) BIPA because it did not:

- Develop and issue a written policy governing the collection, maintenance and destruction of its workers' voiceprints or biometric identifiers, failed to comply with any written policy governing the destruction of such biometric identifiers, and failed to timely destroy Plaintiff's and the Class' biometric identifiers, specifically their voiceprint or voice templates;

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their biometric identifiers or voiceprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class' voiceprints, as required by the BIPA; and

- Receive a written release from Plaintiff or Class members to collect, capture, or otherwise obtain their biometric identifiers or voiceprints, as required by the BIPA.

19.    Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; (iii) awarding liquidated damages to Plaintiff and the Class; (iv) awarding Plaintiff and the Class statutory damages for such violations; and (v) enjoining Defendant from its continued violations of BIPA by, among other things, causing it to issue and comply with a written policy regarding the collection, use, possession, storage and destruction of biometric data, and deleting from any of

5

its data bases and systems, including it central voice console, the biometric data of Plaintiff and Class members.

## PARTIES

20. Plaintiff Andrew L. Barton is a natural person and was a citizen of the State of Illinois at the time his voiceprint was taken. Barton worked as a picker for Defendant at its Elwood facility from March 16, 2019 to about June or July, 2020, and from mid-2020 to about May 2021.

21. Defendant Walmart is one of the largest retailers in the world. It is a Delaware corporation with its principal place of business in Bentonville, Arkansas.

## JURISDICTION AND VENUE

22. This Court has jurisdiction pursuant to 28 U.S.C. §1332(d)(2) (the "Class Action Fairness Act" or "CAFA") because Defendant is diverse from Plaintiff, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are over 1,000 members of the Class, as Walmart has stated in its Notice of Removal. (ECF No. 1). Because it is estimated that the Class will have over 1,000 members and Defendant's intentional and reckless violations of BIPA are punishable by statutory damages of $5,000 per violation, the amount in controversy is in excess of $5,000,000. *Id*.

23. This Court has personal jurisdiction over Walmart as Walmart has significant operations in Illinois including 139 superstores, 15 discount stores, 11 neighborhood markets, and 13 Sam's Clubs. It also maintains at least four major distribution or fulfillment centers in Illinois— one of which is at issue here.

24. Walmart thus has continuous and systematic contacts with the state of Illinois sufficient to confer general jurisdiction over it. The Court further has specific jurisdiction over Walmart, as (1) Walmart has purposefully directed activities in this state and has availed itself of the privilege of conducting business here, and (2) the injuries alleged herein arise out of or relate

to Walmart's conduct in Illinois.

25.     Venue is proper under 28 U.S.C.§1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred in this judicial district.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

26.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b).  Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology.  *See* 740 ILCS 14/5.

27.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy.  That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which are unique biometric identifiers that can be linked to people's sensitive financial and personal data— could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

28.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008.  *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

29. BIPA is an informed consent statute that achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15(b) (emphasis added).

30. Biometric identifiers are defined as retina and iris scans, voiceprints, scans of hand and face geometry and fingerprints, in other words any indelible biometric personal physical characteristic that could be used by someone to identify a person. *See* 740 ILCS 14/10.

31. Biometric information is separately defined to include any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier that is used to identify an individual. *See id.*

32. Voice recordings that are analyzed and made into a template of someone's voice such that it enables that particular person to interact with a particular software that then recognizes that person and his/her voice are biometric identifiers.

33. BIPA specifically provides that biometric identifiers, such as those at issue here, *or* biometric information cannot be obtained without first obtaining a person's consent, and that the retention and destruction of biometric identifiers or biometric information must be subject to a written policy respecting their retention and destruction.

34. In other words, BIPA applies any time a biometric identifier, such as the voiceprints and voice templates at issue here, are taken without consent, and without compliance with a written policy regarding their retention and destruction.

8

**II.      Walmart Violates the Biometric Information Privacy Act.**

35.      By the time BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

36.      Unfortunately, Defendant, despite knowing about BIPA and its requirements, specifically continues to collect, store, and use its workers' biometric identifiers in violation of the BIPA.

37.      Walmart uses a version of Honeywell's Vocollect Solutions.  Vocollect is a voice-enabled, voice technology system, used often in warehouses, which allows warehouse workers to engage in real-time communications with the Vocollect software. The Vocollect software recognizes the individualized patterns of a worker's voice, and his peculiar behavioral patterns by breaking down his voice into small samples, which the software then analyzes and compares to the template on which it has been trained.

38.      An operator data file is first created and then stored on the warehouse computers, and consists of the worker's individual identifiers, including his name, employee number and the template or voiceprint of his voice that he creates such that the voice template is identified with both the worker and his employee number through the data file.

39.      Specifically, when warehouse workers, in particular, pickers, first begin working at one of Defendant's warehouses or distribution facilities, they are required to engage in lengthy training sessions during which they not only learn the system but create a personalized template of their voice and train the system's software to recognize and identify their voice.

40.      During this training, workers are required to repeatedly read long lists of certain

words into the system from a document entitled, "Pick Task-Voice Template Words", that allows the Vocollect software to create a template of the voice of that particular worker and trains the voice recognition software to understand and identify the voice of that particular worker.

41.     Such words or phrases include "next pick", "repeat pick", "trip summary", "say again" and "repeat label".  Numbers include "000", "101" and "929".

42.     The system then creates an individualized voice template that is stored in a central host computer, known as a voice console, that contains the unique voice template of each warehouse worker or picker as part of that operator's data file.  The training exercise, which is speaker dependent, essentially trains the system to recognize that worker's voice and verbal patterns, which then culminate in the creation of a voiceprint or voice template for that worker.

43.     The voiceprint or voice template, similar to a fingerprint, allows the system's software to identify the worker's voice by comparing the voice on the template to the words being spoken by the worker in real time so that the worker can interact with the software.  As Honeywell itself has indicated, the system is a speaker- dependent voice recognition technology.  It is dependent upon the measurement and analysis of a worker's unique physical behavioral characteristics or voice pattern.  It is a record of mechanical measurement of a worker's voice, that allows the system to recognize the worker's voice and thus the worker, so that it can interact with that worker.

44.     Accordingly, when a picker or warehouse worker arrives for work, he is provided a headset and a wireless device through which he will receive orders.  He selects a battery, sometimes with his name on it, which he then puts into the device and takes his headset.

45.     He then inputs his employee number into the device. That action then loads that worker's voice template or voiceprint into the device, which is often worn on a worker's belt or somewhere on his body to keep his hands free to engage in picking orders.

46.     Orders are received by a central work management or host computer as data, which are then sent to the worker's device as speech and is heard by the worker through his headset.

47.     Once an order is sent to a worker wearing a headset and the device, it then tells the worker where in the warehouse he is to go, and the identity and quantity of the particular good he is to pick up.

48.     After a worker has picked up the required quantity of that item, he then confirms his location, and the identify and quantity of the item he has secured by speaking into his headset. The software, which has had the worker's voice template loaded on, understands the worker because of his voice template or voiceprint by comparing the worker's voice and speech pattern with the previously created voiceprint or template and presents the worker with another order.

49.     The system is not only geared to allow Walmart to track workers and its inventory in real time but, similar to fingerprints, prevents workers from engaging in buddy check-ins, where an absent worker gives his employee number to a worker who is on the premises, and has him check in through the use of his employee number.   It also enables Walmart to monitor the productivity and accuracy of each worker in real time.

50.     Because the system relies on personalized voice templates, similar to fingerprint-based clock ins, and because the system will only load a particular operator's template taken from his data file, another worker is disabled from effectively clocking in and working in the absent worker's place. In other words, the voice template is linked and part of the operator's data file which identifies that unique worker and cannot be used by others.

51.     The operator data profiles, including the voiceprints, are stored in a central work system on the voice console that contains the voiceprints or voice templates of each worker, and his name and employee number.

52.     In the event that Walmart's systems are breached or hacked, a hacker could have

access to the operator data profiles, including an operator's name and his associated voiceprint or voice templates, from which it could manipulate those personalized voiceprints for its own wrongdoing and misuse.

53.     That is especially true since, upon information and belief, Walmart fails to timely delete these operator data profiles, including the voiceprints or voice templates, even after terminating an employee, leaving such employees exposed to a potential data breach or hacking.

54.     Defendant intentionally, recklessly or negligently failed to inform its workers of the complete purposes for which it collects their sensitive biometric identifiers or to whom the identifier is disclosed, if at all, and failed to obtain their knowing consent to use their biometric identifier.

55.     Defendant intentionally, recklessly or negligently failed to provide its workers with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its workers' voiceprints when the initial purpose for collecting or obtaining their voiceprints is no longer relevant, as required by BIPA.  A worker who leaves the company does so without any knowledge of when his biometric identifiers will be removed from Defendant's databases -- or if they will ever be.  Moreover, Defendant failed to issue or comply with any written schedule.

56.     The Pay By Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Defendant's is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric identifiers who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Defendant disregards these obligations, and instead unlawfully collects, stores, and uses its employees' and workers' biometric identifiers without proper consent.

57.     Ultimately, Defendant disregards its employees' and workers' statutorily protected

privacy rights by violating the BIPA.

## II. FACTS SPECIFIC TO PLAINTIFF

### Plaintiff Barton

58.     Plaintiff Barton worked as a picker at Walmart's distribution facility in Elwood, Illinois, from the period of March 16, 2019 to about June or July 2020.  His employment was terminated for a short period of time and he was rehired and worked at the facility until May 2021.  During that time, Plaintiff also trained other pickers and warehouse workers on the use of the Vocollect system and, in particular, assisted them in creating voiceprints or voice templates.

59.     At the beginning of his employment, Plaintiff was told that the Company used a voice directed system for its pickers, and that he was required to provide certain voice templates, including certain words, phrases and numbers, often used in picking, as described above.

60.     Accordingly, Plaintiff spent time creating his voiceprint or voice template by repeatedly reading words into the system from the "Pick Task—Voice Template Words" list in order to create his voice template or voiceprint.

61.     Thereafter, each time he went to work as a picker, he would get a headset and device, load in a battery, and input his employee number which would then upload his voice template or voiceprint from his operator data file.

62.     When he was filling an order, he would speak into the headset, telling it where he was in the facility, and the item and quantity of that item that he was picking.  The system responded based upon his unique biometric identifiers, as discussed above.

63.     In the course of training others to use the headsets and creating voice templates or voiceprints, Plaintiff would sometimes attempt to speak into the headset that was assigned to his particular trainee.  Because a voice template had been created to recognize that particular trainee based upon the inflections and mechanics of that trainee's voice, he found that the headset was

unable to understand or respond to his commands and he would have to ask the trainee to repeat his instructions into the headset to solicit a response. Because it uses the stored voiceprint as an identifier, it is more than reasonable to infer that the system does not work unless the proper voice template associated with the particular employee number is uploaded, and therefore the voiceprints or templates serve as a unique biometric which identifies a particular worker.

64. Moreover, Plaintiff's voiceprint or voice template was not timely deleted as required by BIPA. During his second tenure with Walmart, he was provided with a headset and device and was able to use his original employee number to load in his original voice template or voiceprint indicating to him that his voiceprint or voice template was never deleted.

65. Defendant never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used his biometric identifier. Similarly, Defendant never informed Plaintiff of any biometric identifier retention policy it developed, or whether it will ever permanently delete his biometric identifying information.

66. Plaintiff never signed a written release allowing Defendant to collect or store his voiceprint.

67. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein, including the risk that his voiceprint or voice template will be obtained by hackers who could then misuse it to, among other things, steal his identity and commit identity theft.

68. Plaintiff and the Class now seek statutory damages under BIPA as compensation for the injuries Defendant has caused as well as injunctive or other relief.

## CLASS ALLEGATIONS

### Class Definition

69. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1)

14

and (3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All persons, within the applicable statute of limitations and while residing in Illinois, who had their voiceprint collected, captured, received, otherwise obtained, or disclosed by Defendant in Illinois, without their consent, and/or who failed to have their voiceprint timely deleted.

70.     The following people are excluded from the Class: (1) any judge or magistrate presiding over this Action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, agents, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

71.     Plaintiff further brings this Action pursuant to Federal Rule of Civil Procedure 23(b)(2) for injunctive relief in order to cause Walmart to issue a written biometric policy governing retention and deletion of biometric identifiers and to comply with such policy.

72.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers from over 1,000 workers who fall into the definition of the Class, according to its Notice of Removal. (ECF No. 1). Ultimately, the Class members will be easily identified through Defendant's records.

73.     **Commonality** and **Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a)   whether Defendant collected, captured, or otherwise obtained Plaintiff's and the

Class's biometric identifiers in the form of voiceprints or voice templates;

b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers;

c) whether Defendant issued a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers;

d) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

e) whether Defendant complies with any such written policy (if one exists); and

f) whether Defendant used Plaintiff's and the Class' voice prints to identify them.

74.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this Action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

75.     **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct.

16

Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in the Amended Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### COUNTS

### COUNT I
### Violation of 740 ILCS 14/1, *et seq.*

### (On Behalf of Plaintiff and the Class)

76.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77.     BIPA requires companies to obtain informed written consent before acquiring biometric identifiers from employees or workers, among others. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first:

(1)     informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

(2)     informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and*

(3)     receives a written release executed by the subject of the biometric identifier or biometric information…." 740 ILCS 14/15(b) (emphasis added).

78.     BIPA also mandates that companies in possession of biometric data establish and

maintain a satisfactory biometric data retention (and--importantly--deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.*, when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

79.     Defendant failed and continues to fail to comply with these BIPA mandates.

80.     Defendant is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

81.     Plaintiff and the Class are persons who had their "biometric identifiers" collected by Defendant, as explained in detail in Section II. *See* 740 ILCS 14/10.

82.     Defendant violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

83.     Defendant violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers were being collected and stored.

84.     Defendant violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers was being collected, stored and used.

85.     Defendant violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its workers' biometric identifiers and biometric information and by failing to comply with such a policy.

86.     By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA. 740 ILCS

14/1, *et. seq.*

87.     On behalf of themselves and the Class, Plaintiff seeks:

(A)     Injunctive and equitable relief as necessary to protect the interests of the Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, possession, storage, and use of biometric identifiers as described herein;

(B)     Injunctive and equitable relief as necessary to protect the public good and the public's right to the issuance of a written policy and to ensure that Defendant complies with the written policy;

(C)     Statutory damages of $1,000 per violation for each of Defendant's negligent violations of the BIPA pursuant to 740 ILCS 14/20(1) or $5,000 for Defendant's intentional or reckless violation of BIPA pursuant to 740ILCS 14/20(2); and

(D)     reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS14/20(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that the Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

B.     Declaring that Defendant's actions, as set out above, violate the BIPA;

C.     Awarding statutory damages of $1,000 for each of Defendant's violations of BIPA, pursuant to 740 ILCS 14/20(1) and/or $5,000 for each of Defendant's violations of BIPA, pursuant to 740 ILCS 14/20(2);

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

E.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the public in Defendant's issuance of a written policy governing its collection, maintenance and deletion of biometric identifiers;

F.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H.      Awarding such other and further relief as equity and justice may require.

## <u>JURY TRIAL</u>

Plaintiff demands a trial by jury for all issues so triable.


Date: October 8, 2021                    Respectfully submitted,

By: *Nicholas R. Lange*
Katrina Carroll (#47274)
Nicholas R.  Lange
**CARLSON LYNCH LLP**
111 W. Washington Street - Suite 1240
Chicago, IL  60602
Phone: (312) 750-1265
Fax: (312) 212-5919
Email:    kcarroll@carlsonlynch.com
          nlange@carlsonlynch.com

Lynda J. Grant
**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Phone: (212) 292-4441
Fax: (212) 292-4442
lgrant@grantfirm.com

Gary S. Graifman
Daniel Edelman
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road
Montvale, New Jersey 07645

Phone: (201) 391-7000
Fax:     (201) 307-1086
ggraifman@kgglaw.com
dedelman@kgglaw.com

***ATTORNEYS FOR PLAINTIFF AND THE
PROPOSED CLASS***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served on all parties.

/s/ *Nicholas R. Lange*
Nicholas R. Lange